UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LORRAINE ADELL, individually and on behalf of all others similarly situated, | ) ) | CASE NO.: 18 -cv-xxxx |
| | ) | |
| Plaintiff, | ) | **CLASS ACTION** |
| | ) | **COMPLAINT** |
| vs. | ) | |
| | ) | |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, | ) ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Lorraine Adell ("Plaintiff"), individually and on behalf of the two plaintiff classes identified below, by her undersigned attorneys, alleges upon personal information as to herself, and upon information and belief as to all other allegations, for her Class Action Complaint ("Complaint") against Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon"), as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action, individually and as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), asserting claims for relief on behalf of two separate classes:

(a)      A Rule 23(b)(2) class comprised of all Verizon wireless telephone customers ("Declaratory Judgment Class"), seeking the following declarations pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202:

(i)      That the waiver of their personal constitutional right to the exercise of the Article III judicial power in connection with their state law claims against Verizon for breach of contract brought within the diversity jurisdiction of the federal courts under the Class

Action Fairness Act of 2005 ("CAFA") is not "voluntary," and therefore not enforceable, because of the absence of the right to refuse to consent to non-Article III arbitration under the Federal Arbitration Act ("FAA") and still receive their equipment and services from Verizon, and

(ii)     That their agreements to bilaterally arbitrate their state law claims brought within the diversity jurisdiction of the federal courts under CAFA are not enforceable because of the "inherent conflict" between arbitration under the FAA and CAFA's express purposes as stated by Congress; and

(b)     A Rule 23(b)(3) class, comprised of all Verizon wireless telephone customers whose wireless phones have an Ohio area code, seeking damages and other amounts awardable under Ohio law for breach of contract based on Verizon's practices in connection with its imposition of its "administrative charge" ("Ohio Class").

2.     In October, 2005, Verizon began to impose on all of its wireless phone customers a newly-minted, per-line, monthly "administrative charge" (the "Administrative Charge"). In 2010, at the beginning of the Class Period (as defined below), the Administrative Charge was $0.92 per line, and was imposed on more than 91 million lines—generating revenues of approximately $84 million monthly and in excess of $1 billion annually nationwide. The Administrative Charge has been as high as $1.23 per line monthly, from December 2015 to the present, and has been and is being imposed on more than 110 million lines—generating revenues to Verizon of approximately $135 million monthly and in excess of $1.6 billion annually nationwide.

3.     The customer agreement between Verizon and its customers, which first identified the Administrative Charge in November 2006, "unambiguously states" that the

Administrative Charge "must be 'related to [Verizon's] governmental costs.'" *See Smale v. Cellco P'shp d/b/a Verizon Wireless,* 547 F. Supp. 2d 1181, 1186 (W.D. Wash. 2008). Verizon conceded this in its papers filed in *Smale*.

4.      In reality, however, Verizon has used the Administrative Charge as a discretionary pass-through of Verizon's general costs. Verizon, in fact, admitted in December 2007 in prior federal court proceedings in the District of New Jersey that it was using the Administrative Charge to "recove[r] general costs it incurred to provide service," including "the costs of building new cell sites."

5.      Thus, Verizon is utilizing the Administrative Charge to effectuate a concealed increase in the agreed-upon monthly rate for service—thereby breaching its contracts with its customers in Ohio and nationwide.

## JURISDICTION AND VENUE

6.      The Court has original federal diversity jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d), for the following reasons:

(a)      The members of the proposed plaintiff classes number 100 or more;

(b)      There is diversity of citizenship between any one member of each plaintiff class (named and unnamed) and Verizon. Plaintiff resides in and is a citizen of Ohio, and Verizon is a general partnership-unincorporated association organized under the laws of Delaware with its principal place of business in New Jersey, and thus is deemed a citizen of Delaware and New Jersey under CAFA, § 1332(d)(10). Additionally, Verizon has tens of millions of wireless phone customers who are citizens of states other than New Jersey and Delaware, including in Ohio and nationwide, and these customers all have been subjected to the

same wrongful acts as Plaintiff based on Verizon's practices in connection with its imposition of the Administrative Charge.

       (c)    The amount in controversy – which may be calculated by aggregating the claims of the putative class members – exceeds the sum or value of $5 million, exclusive of interest and costs.

7.    Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391(b)(1) and § 1391(c)(2), based on Verizon's transacting of business and contracting to supply equipment and services within Ohio and this District that form the basis of Plaintiff's claims.

## THE PARTIES

8.    Plaintiff Lorraine Adell resides in South Euclid, Cuyahoga County, Ohio. Plaintiff is a Verizon wireless telephone customer with an Ohio State area code who has been charged and paid the Administrative Charge that is the subject of this action.

9.    Verizon is a general partnership organized under the laws of Delaware with its principal place of business in New Jersey. According to the Form 10-K for the annual period ending December 31, 2017 filed with the Securities and Exchange Commission ("SEC") by Verizon's parent company, Verizon Communications, Inc. ("2017 Form 10-K"), Verizon is "the largest wireless service provider in the United States, as measured by retail connections and revenue. At December 31, 2017, Verizo[n] had 116.3 million retail connections and 2017 revenues of approximately $87.5 billion[.]"

## CLASS ACTION ALLEGATIONS

10.    Plaintiff brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a) and (b) asserting claims on behalf of the following two classes:

(a)     The Rule 23(b)(2) Declaratory Judgment Class comprised of all Verizon wireless telephone customers, seeking the following declarations pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202:

(i)     That the waiver of their personal constitutional right to the exercise of the Article III judicial power in connection with their state law claims against Verizon for breach of contract brought within the diversity jurisdiction of the federal courts under CAFA is not "voluntary," and therefore not enforceable, because of the absence of the right to refuse to consent to non-Article III arbitration under the FAA and still receive their equipment and services from Verizon, and

(ii)    That their agreements to bilaterally arbitrate their state law claims brought within the diversity jurisdiction of the federal courts under CAFA are not enforceable because of the "inherent conflict" between arbitration under the FAA and CAFA's express purposes as stated by Congress; and

(b)     The Rule 23(b)(3) Ohio Class, comprised of all Verizon wireless telephone customers whose wireless phones have an Ohio area code, seeking damages and other amounts awardable under Ohio law for breach of contract based on Verizon's practices in connection with its imposition of the Administrative Charge during the period beginning 8 years before the commencement of this action and continuing to the present (the "Class Period").[1]

---

[1]     A copy of the current customer agreement ("Customer Agreement), dated October 20, 2017, is attached as Exhibit 1 to this Complaint. The Customer Agreement (at .pdf 6 ) states that "this agreement and any disputes covered by it are governed by federal law and the laws of the state encompassing the area code of your wireless phone number when you accepted this agreement, without regard to the conflicts of laws and rules of that state." All prior Customer Agreements in force during the Class Period included identical or substantially similar language.

11.     Plaintiff and the Declaratory Judgment Class and the Ohio Class satisfy the requirements for class certification pursuant to Fed. R. Civ. P. 23(a), and Rules 23(b)(2) and 23(b)(3), respectively.

12.     The members of the Classes are so numerous that joinder of all members is impracticable, as required by Fed. R. Civ. P. 23(a)(1). Although the precise number of members of the Classes is unknown to Plaintiff at this time and can be determined only by appropriate discovery, it is reasonably estimated based on the 2017 Form 10-K that the Declaratory Judgment Class members number in excess of 100 million, and that the Ohio Class members number in excess of 3 million.

13.     Common questions of law and fact exist as to all members of the Classes, as required by Rule 23(a)(2).

14.     For the Declaratory Judgment Class, the common questions of law and fact are:

(a)     Whether the waiver of their personal constitutional right to the exercise of the Article III judicial power in connection with their state law claims against Verizon for breach of contract brought within the diversity jurisdiction of the federal courts under the CAFA is not "voluntary," and therefore not enforceable, because of the absence of the right to refuse to consent to non-Article III arbitration under the FAA and still receive their equipment and services from Verizon, and

(b)     Whether their agreements to bilaterally arbitrate their state law claims brought within the diversity jurisdiction of the federal courts under CAFA are not enforceable because of the "inherent conflict" between arbitration under the FAA and CAFA's express purposes as stated by Congress.

15.     For the Ohio Class, the common questions of law and fact include:

(a)     Whether Verizon has breached the Customer Agreement and the implied duty of good faith and fair dealing based on its practices in connection with its imposition of the Administrative Charge; and

(b)     The appropriate measure of damages and other amounts and relief awardable under Ohio law.

16.     Plaintiff is a Verizon wireless telephone customer with an Ohio area code on whom Verizon has imposed the Administrative Charge, and thus is a member of the Classes she seeks to represent. Plaintiff's claims are typical of the claims of the members of the Classes, as required under Fed. R. Civ. P. 23(a)(3). The harm suffered by Plaintiff and all other members of the Classes was and is caused by the same conduct, as follows:

(a)     With respect to the Declaratory Judgment Class, (i) the involuntary and unenforceable waiver of their personal constitutional right to the exercise of the Article III judicial power in connection with their state law claims against Verizon for breach of contract, and (ii) the imposition of bilateral arbitration under the FAA of their state law claims for breach of contract which "inherently conflicts" with CAFA's express purposes as stated by Congress; and

(b)     With respect to the Ohio Class, the injuries resulting from Verizon's wrongful practices in connection with Verizon's imposition of the Administrative Charge that breach the Customer Agreement and the implied duty of good faith and fair dealing.

17.     Plaintiff will fairly and adequately represent and protect the interests of the Classes as required under Fed. R. Civ. P. 23(a)(4). Plaintiff has no interests antagonistic to or in conflict with the Classes, and Plaintiff has retained competent counsel, experienced in consumer

and other class actions, wireless telecommunications law and constitutional litigation, to further ensure such protection and who intends to prosecute this action vigorously

18.     The Declaratory Judgment Class satisfies the requirements of Rule 23(b)(2), because Verizon has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

19.     The Ohio Class satisfies the requirements of Rule 23(b)(3), because:

(a)     The common questions under Rule 23(a)(2) predominate over any questions that may affect individual Class members.

(b)     The class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the Administrative Charge imposed on the millions of members of the Ohio Class is only in the $1 range monthly per line and the monetary damages suffered by those Class member individually are very small, the expense and burden of individual litigation make it impossible for individual members of the Class to seek redress from the federal courts for Verizon's wrongful conduct in connection with its imposition of the Administrative Charge. If class treatment of these claims is not available, Verizon will continue its wrongful conduct, and will retain and continue to collect many hundreds of millions of dollars in unlawful Administrative Charges, and will otherwise escape liability for its wrongdoing in connection with its imposition of the Administrative Charge.

(c)     The Ohio Class is readily definable, and prosecution of this action as a class action will reduce the possibility of repetitious litigation. Information concerning the Class members and amount of Administrative Charges Verizon has imposed on them is found in the data readily available from Verizon's computerized books and records. Plaintiff knows of no

difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

**THE WAIVER BY THE DECLARATORY JUDGMENT CLASS OF THEIR PERSONAL CONSITUTIONAL RIGHT TO THE EXERCISE OF THE ARTICLE III JUDICIAL POWER IN CONNECTION WITH THEIR BREACH OF CONTRACT CLAIMS AGAINST VERIZON IS NOT "VOLUNTARY," AND THEREFORE NOT ENFORCEABLE**

20.     Under CAFA's grant of original jurisdiction, 28 U.S.C. § 1332(d), Plaintiff and all of Verizon's other customers have the personal constitutional right to invoke the judicial power of the Article III courts for the adjudication of their state law breach of contract claims against Verizon based on Verizon's Administrative Charge practices.

21.     Verizon's standard form Customer Agreement, however, includes an Arbitration Agreement requiring Plaintiff and all of Verizon's other customers "TO RESOLVE DISPUTES ONLY BY ARBITRATION" "BY ONE OR MORE NEUTRAL ARBITRATORS," and further states and confirms that "THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT." *See* Exhibit 1, at .pdf 4-5.

22.     In prior federal court litigation, Verizon admitted "that the Customer Agreement contains [the Arbitration Agreement] and that acceptance of the Customer Agreement is necessary to obtain equipment and services from Verizon[.]"

23.     Thus, no Verizon customer is given the right to refuse to consent to non-Article III arbitration under the FAA and still receive equipment and services from Verizon.

24.     In *Wellness Int'l Network Ltd. v. Sharif,* 135 S. Ct. 1932, 1948 (2015), the Supreme Court held that the waiver of the personal constitutional right to adjudication by an Article III court "must … be knowing and voluntary"—that is that the party must be provided with "'notification of the right to refuse' adjudication by a non-Article III court *as 'a*

*prerequisite to any inference of consent*'" to the waiver of the constitutional right (emphasis added).

25.     As the Supreme Court and the Sixth Circuit have stated in numerous decisions, "[a]rbitration under the [FAA] is a matter of consent, not coercion." *E.g., Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); *Richmond Health Facilities v. Nichols,* 811 F.3d 192, 201 (6th Cir. 2016) (quoting *Volt*).

26.     In addition, the legislative history of the FAA includes multiple references to the fact that arbitration under the FAA must be "voluntary."

27.     Because Verizon does not provide its customers with the right to refuse to consent to arbitration under the FAA and still receive their equipment and services from Verizon, their waiver of their personal constitutional right to the exercise of the Article III judicial power in connection with their state law claims against Verizon for breach of contract brought within the diversity jurisdiction of the federal courts under CAFA is not voluntary, and therefore not enforceable.

### ARBITRATION UNDER THE FAA INHERENTLY CONFLICTS WITH THE PURPOSES OF CAFA AS EXPRESSLY STATED BY CONGRESS

28.     The findings and purposes of Congress in enacting CAFA are unequivocally stated in the statute, Pub. L. No. 109-02 (enacted Feb. 18, 2005), 119 Stat. 4-5. *See also* Notes to 28 U.S.C. §1711. CAFA § 2(a), 119 Stat. 4, sets out the findings of Congress, here in relevant part:

> (a) Findings.—Congress finds the following:
> (1)  Class action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a single action against a defendant that has allegedly caused harm.

29.     CAFA § 2(b), 119 Stat. 5, sets out Congress's purposes of CAFA, here in their entirety:

> (b) Purposes.—The purposes of this Act are to—
>     (1) assure fair and prompt recoveries for class members with legitimate claims;
>     (2) restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction; and
>     (3) benefit society by encouraging innovation and lowering consumer prices.

30.     The fundamental attributes of arbitration under the FAA, and the interference of class adjudication and its incompatibility with these fundamental attributes, are set out in the Supreme Court's decisions in *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685-86 (2010), and *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 344-45, 348-50 (2011).

31.     *Stolt-Nielsen* describes the "fundamental changes" caused by the shift from bilateral arbitration to class adjudication, 559 U.S. at 686, including:

(i) resolution not of "a single dispute between parties to a single agreement," but of "many disputes between hundreds or perhaps even thousands of parties"; (ii) the inapplicability of "'[t]he presumption of privacy and confidentiality' that applies in many bilateral arbitrations"; (iii) an award binding not "just the parties to a single arbitration agreement, but … the rights of absent parties as well"; and (iv) "judicial review [that] is much more limited" even though "the commercial stakes of class-action arbitration are comparable to those of class-action litigation.

32.     The incompatibility of class adjudication with arbitration under the FAA is similarly described in *Concepcion*, 563 U.S. at 348-50, including:

(i) the sacrifice of "the principal advantage of arbitration—its informality"; (ii) the fact that "class arbitration *requires* procedural formality"; and (iii) the fact that "arbitrators

are not generally knowledgeable in the often dominant procedural aspects of [class] certification."

33.     Thus, arbitration under the FAA, and in particular bilateral arbitration,[2] inherently conflicts with and precludes the accomplishment of the express purposes of CAFA in connection with class-wide claims brought within the diversity jurisdiction of the federal courts:

(i)      Arbitration under the FAA prevents "the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a single action against a defendant that has allegedly caused harm";

(ii)     Arbitration under the FAA prevents "fair and prompt recoveries for class members with legitimate claims";

(iii)    Arbitration under the FAA "[frustrates] the intent of the framers of the United States Constitution by [preventing] Federal court consideration of interstate cases of national importance under diversity jurisdiction"; and

(iv)    Arbitration under the FAA precludes and eliminates the Congressionally intended "benefit [to] society by encouraging innovation and lowering consumer prices."

34.     Because arbitration under the FAA "inherently conflicts" with, and indeed is antithetical to, the purposes of CAFA expressly stated by Congress, the Arbitration Agreement is not enforceable with respect to the state law breach of contract claims of Plaintiff and the

---

[2] At all times during the Class Period, Verizon's Arbitration Agreement has included a prohibition on class action arbitration. Ex. 1, .pdf 5 at § 3 ("**THIS AGREEMENT DOESN'T ALLOW CLASS … ARBITRATIONS[.]**") (bold in original). Additionally, the Arbitration Agreement is voided in its entirety if the prohibition on class arbitration in § 3 cannot be enforced. *Id.* at § 8 ("**IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION (3) CANNOT BE ENFORCED …, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY[.]**") (bold in original).

Declaratory Judgment Class brought within the diversity jurisdiction of the federal courts under CAFA.

## STATEMENT OF ADDITIONAL FACTS

35.     When Verizon's monthly Administrative Charge was first implemented as of October 1, 2005, it was in the amount of $0.40 per line, and was imposed on approximately 50 million lines, generating new revenues for Verizon of approximately $20 million monthly and $240 million annually. In March, 2007, the Administrative Charge was increased by Verizon by 75%, to $0.70 per line—supposedly to recover the same costs as when it was implemented at $0.40 a line seventeen months earlier in 2005—and was imposed on some 60 million lines, generating revenues of approximately $42 million monthly and $500 million annually.

36.     Since the time of its first increase to $0.70 in March 2007, Verizon has continued to change the amount of the monthly Administrative Charge periodically. Beginning in or around May, 2008, the charge was increased by $0.15, to $0.85. Effective July 1, 2009, it was increased again, by $0.07, to $0.92—the amount charged at the commencement of the Class Period. Beginning on May 13, 2010, the Administrative Charge was reduced by $0.09, from $0.92 to $0.83. Effective January 1, 2012, the Administrative Charge was increased by $0.16, to $0.99. On January 1, 2013, the Administrative Charge was reduced to $0.90, and on February 1, 2014 it was reduced again, to $0.88. On December 1, 2015, the Administrative Charge was increased to its highest amount since first being imposed, $1.23 per line monthly—an increase of 40% over the prior rate—and since then has been imposed on more than 110 million lines, and has generated revenues of approximately $135 million monthly and in excess of $1.6 billion annually nationwide.

37.     Thus, assuming more than 110 million lines nationwide as disclosed in the 2017 Form 10-K, and assuming that the number of lines with Ohio area codes approximately corresponds to Ohio's percentage of the United States population (3.6%), the Ohio Class currently consists of approximately 4 million lines being charged $1.23 per line monthly—generating revenues of approximately $4.92 million monthly and $59 million annually—and total revenues from this single Administrative Charge line item of well in excess of $300 million during the Class Period beginning 8 years ago.

38.     At the time Verizon implemented the Administrative Charge in October, 2005, there was no reference to it in the section of the Customer Agreement regarding Verizon's imposition of governmental related charges and fees set by Verizon, only the Federal Universal Service Charge and the Regulatory Charge:

> You agree to pay all access, usage and other charges and fees we bill you or that the user of your wireless phone accepted, even if you weren't the user of your wireless phone and didn't authorize its use. *These include Federal Universal Service Charges and Regulatory Charges, and may include other charges also related to our governmental costs.* We set these charges. They aren't taxes, aren't required by law, are kept by us in whole or in part, and are subject to change. . . . (emphasis added)

39.     Verizon's Customer Agreement was amended in November, 2006 to specifically reference the Administrative Charge as one of the governmental related charges set by Verizon, and subject to a revision in September 2011, discussed *infra,* has remained substantially the same:

> You agree to pay all access, usage and other charges and fees we bill you or that the user of your wireless phone accepted, even if you weren't the user of your wireless phone and didn't authorize its use. *These include Federal Universal Service, Regulatory and Administrative Charges, and may include other charges also related to our governmental costs.* We set these charges. They aren't taxes, aren't required by law, are kept by us in whole or in part, and are subject to change. . . . (emphasis added)

14

This version of the Customer Agreement regarding the Administrative Charge is the version that was in place at the beginning of the Class Period in 2010.

40.     This is also the version that the United States District Court for the Western District of Washington held "unambiguously states" that the Administrative Charge "must be 'related to [Verizon's] governmental costs.'" *See Smale v. Cellco P'shp d/b/a Verizon Wireless,* 547 F. Supp. 2d 1181, 1186 (W.D. Wash. 2008). And, as noted in the Nature of the Action above, Verizon conceded this in its papers filed in *Smale*.

41.     Verizon revised its standard form Customer Agreement regarding the Administrative Charge effective September 13, 2011, which beginning then stated as follows:

> You agree to pay all access, usage and other charges that you or the user of your wireless device incurred. For [Service for which usage charges are billed at the end of the billing period], *our charges also include Federal Universal Service, Regulatory and Administrative Charges, and we may also include other charges related to our governmental costs.* We set these charges; they aren't taxes, they aren't required by law, they are not necessarily related to anything the government does, they are kept by us in whole or in part, and the amounts and what they pay for may change. (emphasis added)

42.     The relevant language of the Customer Agreement has remained substantially the same since the September 2011 revision. The current Customer Agreement, dated October 20, 2017, provides as follows (Exhibit 1, at .pdf 2-3):

> You agree to pay all access, usage and other charges that you or any other user of your wireless device incurred. ...
>
> *Our charges also include Federal Universal Service, Regulatory and Administrative Charges, and we may also include other charges related to our governmental costs.* We set these charges; they aren't taxes, they aren't required by law, they are not necessarily related to anything the government does, they are kept by us in whole or in part, and the amounts and what they pay for may change.

43.     Thus, in its current form, as well as during the entirety of the Class Period, Verizon's Customer Agreement expressly and unambiguously states that Verizon's charges

include "Federal Universal Service, Regulatory and Administrative Charges, and . . . other charges related to our governmental costs."

44.     However, as also noted in the Nature of the Action, above, Verizon admitted in December 2007 in prior federal court proceedings in the District of New Jersey that it was using the Administrative Charge to "recove[r] general costs it incurred to provide service," including "the costs of building new cell sites." Upon information and belief, other components of the Administrative Charge imposed during the Class Period are general costs not "related to [Verizon's] governmental costs."

45.     Thus, Verizon has used the Administrative Charge as a discretionary pass-through of Verizon's general costs despite the unambiguous requirement under the Customer Agreement that the Administrative Charge be used to recover amounts "related to [its] governmental costs."

**FIRST CLAIM FOR RELIEF**

**(For a Declaratory Judgment On Behalf of Plaintiff Individually, and the Declaratory Judgment Class)**

46.     Plaintiff realleges and reincorporates herein each and every allegation set forth in this Complaint as if set forth verbatim herein.

47.     The waiver of the personal constitutional right of Plaintiff and the Declaratory Judgment Class to the exercise of the Article III judicial power in connection with their state law claims against Verizon for breach of contract brought within the diversity jurisdiction of the federal courts under the CAFA is not "voluntary," and therefore not enforceable, because of the absence of the right to refuse to consent to non-Article III arbitration under the FAA and still receive their equipment and services from Verizon.

48.     Additionally, the agreements of Plaintiff and the Declaratory Judgment Class to bilaterally arbitrate their state law claims brought within the diversity jurisdiction of the federal

16

courts under CAFA are not enforceable because of the "inherent conflict" between arbitration under the FAA and CAFA's express purposes as stated by Congress.

49.     The enforceability of the Arbitration Agreement and its provisions is a "gateway" issue to be decided first by the District Court as a matter of law. Furthermore, § 3 of the Arbitration Agreement also makes the enforceability of the prohibition on class action arbitration an issue to be decided by the Court and not an arbitrator (Exhibit 1, at .pdf 5).

50.     As an initial matter, Plaintiff individually is entitled to a judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring:

(a)     that the waiver of Plaintiff's personal constitutional right to the exercise of the Article III judicial power in connection with her state law claim against Verizon for breach of contract brought within the diversity jurisdiction of the federal courts under the CAFA is not "voluntary," and therefore not enforceable, because of the absence of the right to refuse to consent to non-Article III arbitration under the FAA and still receive her equipment and services from Verizon; and

(b)     that Plaintiff's agreement to bilaterally arbitrate her state law claim brought within the diversity jurisdiction of the federal courts under CAFA is not enforceable because of the "inherent conflict" between arbitration under the FAA and CAFA's express purposes as stated by Congress.

51.     After certification of the Declaratory Judgment Class pursuant to Fed. R. Civ. P. 23(a) and (b)(2), then all members of the Declaratory Judgment Class are entitled to a judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring:

(a)     that the waiver of their personal constitutional right to the exercise of the Article III judicial power in connection with their state law claims against Verizon for breach of

contract brought within the diversity jurisdiction of the federal courts under the CAFA is not

"voluntary," and therefore not enforceable, because of the absence of the right to refuse to

consent to non-Article III arbitration under the FAA and still receive their equipment and

services from Verizon; and

(b)     that their agreements to bilaterally arbitrate their state law claims brought

within the diversity jurisdiction of the federal courts under CAFA are not enforceable because of

the "inherent conflict" between arbitration under the FAA and CAFA's express purposes as

stated by Congress.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract – On Behalf Plaintiff Individually, and the Ohio Class)

52.     Plaintiff realleges and reincorporates herein each and every allegation set forth in

this Complaint as if set forth verbatim herein.

53.     Verizon's imposition and utilization of the Administrative Charge to recover

general costs that are not governmental related is a concealed increase in the agreed-upon

monthly rate for service, and a breach of the terms of the Customer Agreement and the implied

duty of good faith and fair dealing.

54.     Additionally, Verizon's imposition and utilization of the Administrative Charges

to recover general costs wholly unrelated to the provision of its wireless telephone services and

that are imposed on all businesses, such as property taxes, is a breach of the implied duty of good

faith and fair dealing.

55.     Plaintiff and the Ohio Class have been injured by Verizon's breach of the

Customer Agreement, including its breach of the implied duty of good faith and fair dealing.

56.     Verizon is liable for the damages sustained by Plaintiff and the Ohio Class in an amount to be determined at trial, but estimated to be more than $100 million.

57.     All payments of the improper Administrative Charges by Plaintiff prior to the commencement of this action were not voluntary payments, and her continuing payments of the improper Administrative Charges since the commencement of this action are "under protest" and are not being paid voluntarily.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of Classes identified herein, prays for relief, and judgment in her and their favor, as follows:

A.     Declaring, as to Plaintiff individually, pursuant to 28 U.S.C. §§ 2201-2202:

(i)     that the waiver of Plaintiff's personal constitutional right to the exercise of the Article III judicial power in connection with her state law claim against Verizon for breach of contract brought within the diversity jurisdiction of the federal courts under the CAFA is not "voluntary," and therefore not enforceable, because of the absence of the right to refuse to consent to non-Article III arbitration under the FAA and still receive her equipment and services from Verizon, and

(ii)    that Plaintiff's agreement to bilaterally arbitrate her state law claims brought within the diversity jurisdiction of the federal courts under CAFA is not enforceable because of the "inherent conflict" between arbitration under the FAA and CAFA's express purposes as stated by Congress;

B.     Certifying this action as a class action pursuant to Fed. R. Civ. P. 23(a), and Rule 23(b)(2) with respect to the Declaratory Judgment Class and Rule 23(b)(3) with respect to the

Ohio Class, with Plaintiff certified as representative of the Classes and Plaintiff's counsel designated counsel for the Classes;

C.      Declaring, as to the Declaratory Judgment Class, pursuant to 28 U.S.C. §§ 2201-2202:

(i)     that the waiver of their personal constitutional right to the exercise of the Article III judicial power in connection with their state law claims against Verizon for breach of contract brought within the diversity jurisdiction of the federal courts under the CAFA is not "voluntary," and therefore not enforceable, because of the absence of the right to refuse to consent to non-Article III arbitration under the FAA and still receive their equipment and services from Verizon, and

(ii)    that their agreements to bilaterally arbitrate their state law claims brought within the diversity jurisdiction of the federal courts under CAFA are not enforceable because of the "inherent conflict" between arbitration under the FAA and CAFA's express purposes as stated by Congress;

D.      Declaring, as to Plaintiff individually and the Ohio Class, that Verizon's practices in connection with its imposition of the Administrative Charge breach Verizon's Customer Agreement with Plaintiff and the Ohio Class and the implied duty of good faith and fair dealing;

E.      Awarding, as to Plaintiff individually and to the Ohio Class, compensatory damages and other amounts allowable under Ohio law as a result of Verizon's breach of the Customer Agreement and the implied duty of good faith and fair dealing, in an amount to be determined at trial;

F.      Awarding the costs and disbursements incurred in connection with this action, including reasonable attorney's fees and expenses;

20

G.      Awarding pre- and post-judgment interest; and

H.      Granting such other and further relief as the Court deems just and proper.


Dated:  March 19, 2018

                                        LAW OFFICES OF WILLIAM R. WEINSTEIN

                                        By:     s/ William R. Weinstein
                                                William R. Weinstein
                                        199 Main Street, 4th Floor
                                        White Plains, New York 10601
                                        Phone: (914) 997-2205
                                        Fax: (877) 428-8388
                                        Email: wrw@wweinsteinlaw.com
                                        New York State Bar Registration No.: 2016434

                                        KARON LLC

                                        By:     s/ Daniel R. Karon
                                                Daniel R. Karon
                                        700 W. St. Clair Ave.
                                        Suite 200
                                        Cleveland, Ohio 44113
                                        Phone: (216) 622-1851
                                        Fax: (216) 241-8175
                                        Email: dkaron@karonllc.com
                                        Ohio State Bar Registration No.: 69304

                                        LOCKRIDGE GRINDAL & NAUEN P.L.L.P.
                                        Gregg M. Fishbein (to be admitted Pro Hac Vice)
                                        Suite 2200
                                        100 Washington Avenue South
                                        Minneapolis, Minnesota 55401-2159
                                        Phone: (612) 339-6900
                                        Fax: (612) 339-0981
                                        Email: gmfishbein@locklaw.com

                                        ATTORNEYS FOR PLAINTIFF
                                        AND THE CLASSES